### HURD et al. v. NEWBROOK.

(Superior Court of Buffalo, General Term. Febuary 3, 1893.)

1. GUARANTY—CONSIDERATION.
   Where defendant guarantied the payment of a lumber bill made out and presented by plaintiffs to him for approval before delivery of the lumber to a contractor, who used the same in the erection of a house for the guarantor's son, the delivery of the lumber was sufficient consideration for the guaranty.

2. SAME—CONDITIONS.
   The guaranty stated: "I approve of the above bill, amounting to $460, and agree to see it paid, according to the terms of payment agreed to in the building contract." The building contract provided for payment in three installments, the last one when the building was completed. *Held,* that defendant was liable on the guaranty, though the contractor absconded after the payment of the second installment, and nothing was due him on the completion of the building by the owner, since the contract only fixed the time of payment of the guaranty.

Appeal from municipal court.

Action by Harvey J. Hurd and James Hurd against George Newbrook on a written guaranty. From a judgment for defendant, plaintiffs appeal. Reversed.

Argued before TITUS, C. J., and HATCH and WHITE, JJ.

Howard & Clark, for appellants.

Lewis, Moot & Lewis, for respondent.

TITUS, C. J. This action was brought in the municipal court to recover against the defendant for a bill of lumber furnished to one Abraham Walty on a guaranty of payment. It appears that on the 23d day of July, 1891, William G. Newbrook, son of defendant, George Newbrook, contracted with Abraham Walty to build him a house according to certain plans and specifications contained in a contract, the work and material to be furnished by Walty. It was agreed that Walty should receive $1,450 for the job,—$500 when one third of the work was done, and $500 more when two thirds of the work was done, and $450 to be paid to said Walty when the house was completed, and ready for occupancy. Some days after the date of this contract the plaintiffs made out a bill of lumber necessary to build the house, and presented the same to George Newbrook for his approval and guaranty. The defendant wrote upon the bill the following:

"I approve of the above bill, amounting to $460, and agree to see it paid, according to the terms of payment agreed to in the building contract. [Signed] George Newbrook. July 29, 1891."

Thereupon the plaintiffs furnished to Walty the necessary materials for building the house. On the 19th of October, and before Walty had completed his job according to his contract, he absconded, leaving the

building unfinished, and without having paid the plaintiffs the full amount of their bill. William G. Newbrook, the owner, then proceeded to complete the house, at a cost of $275.42. There still remained, at the time of the commencement of this action, unpaid on the plaintiffs' bill, $119.02. It is not quite clear from the evidence given on the trial how the account between Walty and William G. Newbrook stands. He testifies that Walty abandoned his contract about the 20th of October, and that $1,080.60 was paid to him up to the 19th of October. Then he says the balance of the plaintiffs' bill was $160 at that time; that he accepted the different liens and orders, and above that he had $242.40. The accepted orders were $65 for hardware, and two liens for $53.58 and $75.20 respectively. Then, after completing the house for $275, he paid the plaintiffs $40.98 on their bill, which made the amount of the contract price, namely, $1,450. It is not stated anywhere in the case that $1,080.60 paid to Walty includes the two payments to the plaintiffs, but it probably does include the $300 paid them, as they received that amount before the date of his abandoning the contract, although they claim to have received it in checks from Mr. Newbrook. On his cross-examination the witness was asked by the defendant's counsel: "Leaving the liens out of the question, how much money has been paid out, first and last, on that house,—all of it?" And the answer was, "$1,450." This is exclusive of the two liens which amount to $128.83.

The validity of the liens and the amount unpaid to Walty, in the view which I have taken of this case, cannot be of much importance. The liens can only be enforced to the extent of any unpaid balance due the contractor, and it is apparent that at the time of filing the liens the contractor had been overpaid. It thus appears that William G. Newbrook has paid the whole contract price for building his house, leaving the $119.02 of the plaintiffs' claim unpaid. But I do not think the question is to be determined either from the fact that the contract price has been paid, or of the failure of Walty to complete the work according to the terms of his contract. It is claimed that the guaranty was without consideration, and cannot be enforced against the defendant. I think the delivery of the lumber was a sufficient consideration for the guaranty. Before the plaintiffs would deliver the lumber, they had a bill of it made out, and submitted to the defendant for approval. On his approving and agreeing to see that it would be paid, the lumber was delivered to the contractor, on the faith of the guaranty. Under the authorities, it was a sufficient consideration to uphold the undertaking of the defendant. Beakes v. Da Cunha, 126 N. Y. 293, 27 N. E. Rep. 251.

According to the contract of guaranty, the defendant agreed to see the amount of the bill paid according to the terms of the contract, and it is necessary to examine the contract to determine how the payments were to be made. It appears that $500 was to be paid when the work was one third completed, and $500 more when two thirds of the work was done, and $450 was to be retained by Newbrook until the work was finally completed, so that, when the house was completed the whole

amount became due.   It is claimed that because the contractor, Walty, did not complete the work, but abandoned the same, and Newbrook was obliged to complete it, there was no compliance with the terms of the contract, and hence nothing became due on the last payment.   I do not think such a construction of the contract of guaranty is either just or tenable.   The plaintiffs were not a party to the contract with Walty. It was no concern of theirs that the work was not well or completely done, and a failure of a contractor to carry out his contract cannot operate to deprive the plaintiffs of their remedy on the guaranty.   We resort to the contract only to determine or to ascertain the terms of payment, and they are to be construed as a part of the guaranty for that purpose.   It does not create a condition precedent to the right of the plaintiff to maintain the action against the surety.   It simply fixes the terms of payment, and the time within which it is to be made; so that when the work was done, no matter who completes it, the surety becomes liable.   Any other construction would put it in the power of the contracting parties to defeat any person who might furnish material relying upon a guaranty for payment.   Evidently the defendant was interested in giving the contractor, Walty, credit with the plaintiffs, that he might go on and build the house for his son.   The lumber was furnished by the plaintiffs relying upon the assurance expressed in the writing of the defendant that Walty would pay, or, in default thereof, that he would pay the amount of their bill.   The contract of guaranty, construed with the undertaking of Walty, is a complete and perfect contract, fulfilling all of the essential requirements of the cases cited by the counsel for the defendant.   Since the amendment to the Revised Statutes in 1863, it is not necessary to express a consideration in the instrument guarantying against the default of another, and the cases cited upon that question are not in point here.   The judgment should therefore be reversed, with costs.

WHITE, J., concurs in result.

HATCH, J.   I concur in the result reached by TITUS, C. J., upon the ground that the guaranty in this case is to be construed as referring to the building contract to determine the time when payments fell due, and for no other purpose; and, as it appears that the contract was finished to the extent of entitling Walty to two payments, it then became the right of plaintiffs, under the guaranty, to demand pay thereon, and that, upon the proof here, without reference to the subsequent acts of Walty, for, if all the damage occasioned by Walty's breach of contract be deducted, there still remained, and was paid to him, a sum sufficient, and more than sufficient, to discharge plaintiffs' debt.   Under this construction, it is clear that a time came when Walty was entitled to demand a sum of money, due upon the contract, exceeding the amount of plaintiffs' bill.   When that moment arrived, defendant's guaranty attached, and his contract then was to see plaintiffs paid.   There is no hardship in this, for defendant then had it in his power to protect both himself and plaintiffs.   He chose to permit payment to be made to

Walty, without seeing that it was properly applied, and thereby assumed the risk of Walty's default. This construction was overlooked by the court below, and in consequence the judgment must be reversed, with costs.